PITNEY, HARDIN, KIPP & SZUCH LLP
Barry M. Kazan, Esq. (BK 2793)
685 Third Avenue
New York, New York 10017
(212) 297-5800

Attorneys for Defendant Laxmi Poruri

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
――――――――――――――――――――――x
GERSON LEHRMAN GROUP, INC.,       :   03 Civ. 9220 (LAK)
                                  :
        Plaintiff,                :
                                  :
        -against-                 :   **ANSWER AND COUNTERCLAIMS**
                                  :
LAXMI PORURI AND JOHN DOES 1-10,  :
                                  :
        Defendants.               :
                                  :
――――――――――――――――――――――x

Defendant Laxmi Poruri ("GLG"), by way of an Answer to the Verified Complaint ("Complaint") of plaintiff Gerson Lehrman Group ("GLG"), says:

## PRELIMINARY STATEMENT

1. Because Paragraph 1 of the Complaint contains argument rather than any allegations of fact, no response is necessary. To the extent that any response is required, Poruri denies the allegations contained in Paragraph 1.

## PARTIES

2. Poruri admits the allegations contained in Paragraph 2.

3. Poruri denies the allegations contained in Paragraph 3.

4. Poruri denies the allegations contained in Paragraph 4.

## JURISDICTION AND VENUE

5.     Poruri denies the allegations contained in Paragraph 5.

## FACTS

6.     Poruri denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 6. Poruri denies the allegations contained in the second sentence of Paragraph 6, and specifically states that other companies in GLG's field operate similar networks to GLG's "Councils of Advisors." Poruri admits the allegations contained in the third sentence of Paragraph 6, except denies knowledge or information sufficient to form a belief as the number and nature of GLG clients.

7.     Poruri denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 7. Poruri denies the allegations contained in the third sentence of Paragraph 7, and specifically denies that GLG's knowledge about "council members, clients, and the kinds of services that clients need" is maintained as "strictly confidential" and/or as a "trade secret."

8.     Poruri denies knowledge or information sufficient to from a belief as to the truth of the allegations contained in the first and second sentence of Paragraph 8. Poruri denies the allegations contained in the third sentence in Paragraph 8, and specifically states that Mark Gerson admitted to her that he had lied to potential clients in Asia respecting the scope of the technology, media, and telecom council network in Asia.

9.     Poruri denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9, except specifically denies that any information to which Poruri had access was maintained as "valuable confidential trade secrets of GLG."

10.    Poruri denies the allegations contained in Paragraph 10, except admits that Poruri was an associate at GLG and had access to certain information while employed there.

11. Poruri denies the allegations contained in Paragraph 11, except to the extent that it contains legal conclusions to which no response is required.

12. Poruri denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding what "GLG learned" as alleged in Paragraph 12, and denies the remaining allegations contained in Paragraph 12, except admits that Poruri requested that her "My Documents" folder be copied onto a CD ROM so that she could access personal materials that had been resident on the hard drive of the computer that she used at GLG, that on September 4, 2003, the day she resigned from GLG, she removed the CD ROM from the premises of GLG without any objection from anyone at GLG, and that upon GLG's request returned the CD ROM to GLG without retaining copies of any of the information contained thereon.

13. Poruri denies the allegations contained in Paragraph 13, except admits that she asked Zecki Dossal for a list of GLG's competitors, that Mr. Dossal provided a single page list of six competitors with one to two descriptive sentences about each competitor, and that the list did not contain any indication that it was confidential, proprietary or secret information, or that it was provided to GLG's board of directors.

14. Poruri denies the allegations contained in Paragraph 14, except admits that in early 2003, she was provided by others with a draft business plan to which she made some comments and, because of the fact that she typically worked in excess of 80 hours a week, utilized GLG's word processing software to make such comments and refers to the original or an authenticated copy of the referenced draft business plan for its contents.

15. Poruri denies the allegations contained in Paragraph 15 and refers to the original or an authenticated copy of the referenced draft business plan for its contents.

16. Poruri denies the allegations contained in Paragraph 16 and refers to the original or an authenticated copy of the referenced draft business plan for its contents.

17. Poruri denies the allegations contained in Paragraph 17, except admits that she inserted certain text from Mr. Dossal's list into the draft business plan and states that because the information contained therein was about GLG's *competitors*, it could not constitute proprietary, trade secret or otherwise confidential information, and refers to the original or an authenticated copy of the referenced draft business plan for its contents.

18. Poruri denies the allegations contained in Paragraph 18, except admits that she sent the referenced e-mail on September 4, 2003 and refers to the original or an authenticated copy of the e-mail for its contents.

19. Poruri denies the allegations contained in Paragraph 19, except admits that she interviewed one candidate for a position in Asia about which she was informed was a position to sell GLG services to Asian clients, rather than to try and establish an extensive technology, media and telecom network that Mark Gerson previously had misrepresented to potential Asian clients already had been established by GLG (when it fact no such technology, media, and telecom network had yet been established by GLG).

20. Poruri admits the allegations contained in Paragraph 20.

21. Poruri denies the allegations contained in Paragraph 21, except admits that GLG's attorneys sought Poruri's execution of a demonstrably false incriminating affidavit that failed to identify the alleged "confidential" and "proprietary" information Poruri was accused of misusing, and that she was willing to provide an affidavit that since her departure from GLG she has not disclosed any information to any third party that she reasonably believes could be construed as "confidential" or "proprietary" to GLG.

22. Because Paragraph 22 asserts legal conclusions no response is necessary, to the extent that any response is necessary, Poruri denies the allegations contained in Paragraph 22.

4

23. Poruri repeats and incorporates her responses to the allegations in paragraphs 1 through 22 as if fully set forth herein.

24. Poruri denies the allegations contained in Paragraph 24.

25. Poruri denies the allegations contained in Paragraph 25.

26. Poruri denies the allegations contained in Paragraph 26.

27. Poruri denies the allegations contained in Paragraph 27.

28. Poruri denies the allegations contained in Paragraph 28.

29. Poruri denies the allegations contained in Paragraph 29.

30. Poruri denies the allegations contained in Paragraph 30.

31. Poruri repeats and incorporates her responses to the allegations contained in Paragraphs 1 through 30 as if fully set forth herein.

32. Poruri denies the allegations contained in Paragraph 32.

33. Poruri denies the allegations contained in Paragraph 33.

34. Poruri denies the allegations contained in Paragraph 34.

35. Poruri denies the allegations contained in Paragraph 35.

36. Poruri denies the allegations contained in Paragraph 36.

37. Poruri denies the allegations contained in Paragraph 37.

38. Poruri denies the allegations contained in Paragraph 38.

39. Poruri repeats and incorporates her responses to the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

40. Poruri denies the allegations contained in Paragraph 40.

41. Poruri denies the allegations contained in Paragraph 41.

42. Poruri denies the allegations contained in Paragraph 42.

43. Poruri denies the allegations contained in Paragraph 43.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

At all times relevant herein, Poruri conducted herself in a commercially reasonable manner in compliance with all applicable laws.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery by the doctrines of waiver, equitable estoppel, unclean hands, and/or promissory estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery by the equitable doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages were caused by plaintiff's own negligent acts or omissions.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff has failed to take reasonable, necessary, appropriate and feasible steps to mitigate its alleged damages, and to the extent of such failure to mitigate, plaintiff should be barred from recovering some or all of the alleged damages it seeks.

**WHEREFORE** defendant Laxmi Poruri demands judgment in her favor and against plaintiff Gerson Lehrman Group dismissing the Complaint with prejudice, together with costs.

**COUNTERCLAIMS AGAINST GERSON LEHRMAN GROUP, INC.**

Defendant/counterclaim plaintiff Laxmi Poruri, by way of Counterclaim against plaintiff/counterclaim defendant Gerson Lehrman Group, Inc., says:

**Parties**

1.      Laxmi Poruri ("Poruri") is a female individual of Indian heritage domiciled in the State of California. Poruri's permanent residence is 1139 Curry Village Ct., Merced, CA 95340.

2.      Upon information and belief, Gerson Lehrman Group, Inc. ("GLG") was and now is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 11 East 44th Street, New York, NY 10017.

**Poruri's Employment With GLG**

3.      On or about July 16, 2001, Ms. Poruri was hired by GLG as a recruiter.

4.      Under the terms of the parties' agreement, Poruri was to be paid $80,000 and a bonus equal to 10-20% of her annual salary, the precise amount to be determined based upon individual and company performance.

5.      In calendar year 2002, Ms. Poruri was promoted by GLG to the position of research associate.

7

6. As a research associate, GLG agreed to pay to Poruri an annual salary of $90,000 plus a bonus based upon a formula equal to 3-8% of annual revenue managed and maintained by Poruri.

7. In addition to her salary and bonus, and as additional compensation for employment, Poruri was promised the ability to exercise certain stock options pursuant to an Incentive Stock Option Agreement dated February 4, 2002.

8. During the 26 months that Poruri was employed at GLG she received numerous commendations from inside and outside of GLG for the services that she performed.

9. At the time of her termination, Poruri was responsible for no fewer than 30 clients with an anticipated revenue stream to GLG of no less than $3.5 million.

10. Despite the excellent services provided by Poruri, the agreed upon bonuses were never paid by GLG.

11. In addition, upon information and belief, Poruri was paid less than her male counterparts.

12. In addition, upon information and belief, Poruri was paid less than her non-Indian counterparts.

### Poruri's Resignation From GLG

13. On September 4, 2003, Poruri informed Mark Gerson that she was resigning from GLG for personal reasons.

14. Specifically, Poruri stated to Gerson that the primary motivation for leaving GLG was to move back to California to be near her father who suffers from a heart condition.

15. During the course of that conversation, Gerson made several offers to Poruri to secure her continued employment. Specifically, Gerson offered Poruri a six month paid leave of absence.

16. Poruri declined further employment opportunities with GLG, but offered to stay on for two to four weeks to assist in transitioning her work.

17. Subsequent to Poruri's resignation, GLG apparently discovered that they had never required Poruri to sign a non-compete agreement.

18. Subsequent to Poruri's resignation, GLG apparently discovered that they had never required Poruri to sign a non-solicitation agreement.

19. Subsequent to Poruri's resignation, GLG apparently discovered that they had never required Poruri to sign a non-disclosure agreement.

20. Upon discovering that Poruri had not signed either a non-compete agreement, a non-solicitation agreement or a non-disclosure agreement, GLG director David Legg exerted pressure on Poruri to execute a non-compete agreement without providing any consideration therefore.

21. On September 4, 2003, Poruri declined to sign a non-competition agreement until counsel had reviewed same.

22. That evening, Poruri packed up her desk and her personal belongings and removed them from the premises of GLG. On September 5, 2003, Poruri took a personal day.

### GLG's "Termination" of Poruri

23. Upon information and belief, on September 4, 2003, GLG was told by Lee Ainslie of Maverick Capital that a former GLG employee was starting a new research firm to compete

9

with GLG and that the former GLG employee approached Mr. Ainslie to solicit Maverick Capital's investment and/or business for the new research firm.

24. Upon information and belief, GLG later contacted Mr. Ainslie to try and determine the identity of the person who approached Mr. Ainslie.

25. Upon information and belief, GLG assumed from statements made by Mr. Ainslie that the "former employee" was Poruri.

26. On September 8, 2003, Poruri returned to the offices of GLG to begin her work day.

27. Upon entering GLG's offices, Poruri was accosted by Gerson and President and COO Alexander Saint-Amand and brought into a conference room in the presence of a secretary, Christine Ruane, and Managing Director Michael Duran.

28. Both Gerson and Saint-Amand made false accusations about Poruri and peppered Poruri with numerous questions respecting her intentions upon leaving GLG.

29. Ultimately, Gerson and Saint-Amand terminated Poruri's employment, demanded that she leave the premises, and escorted her out of the building. During this exchange, Poruri asked to obtain her wallet and her keys from her desk.

30. Initially, Gerson and Saint-Amand refused to give Poruri her wallet and keys and said that they would send her those items.

31. Finally, Poruri persuaded Gerson and Saint-Amand to return to Poruri her wallet and keys.

32. Later that morning, Jason Li, an employee of GLG called Poruri and informed her that "[GLG] won't go after [Poruri] if you don't start the new company. That is a message from Alexander [Saint-Amand]."

33. Upon information and belief, the grounds for Poruri's termination was GLG's mistaken belief that Poruri had been the "former employee" about whom Mr. Ainslie spoke.

34. Upon information and belief, GLG subsequently learned that the "former employee" about who Mr. Ainslie spoke was not Poruri.

35. Upon information and belief, no disciplinary action has been taken against the individual about whom Mr. Ainslie spoke.

## FIRST COUNT
### (Breach of Contract)

36. Poruri repeats and makes a part hereof the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

37. As consideration for the services provided by Poruri during the course of her employment, GLG agreed to pay to Poruri for calendar year 2003 compensation in an amount not less than $225,000, including bonuses.

38. GLG has paid pro-rated bonuses to individuals who worked partial years.

39. GLG has failed to pay a pro-rated bonus to Poruri for 2003.

40. In addition, GLG has failed to pay bonuses in the amounts agreed to for calendar years 2001 and 2002.

41. Poruri has performed fully her obligations as an employee of GLG from July 16, 2001 through September 5, 2003.

11

42. Poruri has been damaged by GLG's breach of the terms of her employment.

WHEREFORE, Poruri demands judgment against GLG for compensatory damages in the amount not less than $125,000, and such other relief as the Court may deem appropriate, together with interest and costs.

## SECOND COUNT
### (Breach of Incentive Stock Option Agreement)

43. Poruri repeats and makes a part hereof the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

44. As consideration for the services provided by Poruri during her employment, GLG agreed to permit Poruri to exercise certain options to obtain stock in GLG.

45. Upon her resignation, Poruri attempted to exercise the options.

46. Poruri remains willing to satisfy the terms of the Incentive Stock Option Agreement.

47. To date, GLG has refused to acknowledge Poruri's exercise of the terms of the options under the Incentive Stock Option Agreement.

WHEREFORE, Poruri demands judgment against GLG and a declaration for specific performance or, alternatively, damages in an amount to be determined at trial, and such other relief as the Court may deem appropriate, together with interests and costs.

## THIRD COUNT
### (Defamation)

48. Poruri repeats and makes a part hereof the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49. Upon information and belief, on September 8, 2003, Mark Gerson in the presence of more than 50 people maliciously spoke of and concerning Poruri the following words:

    a. "We know for a fact that Poruri raised 2 million dollars of venture capital money."

    b. "We know for a fact that Poruri solicited three of our clients for her new firm."

    c. "Poruri is a criminal."

    d. "Poruri is a manifestation of human evil."

    e. "Poruri has undermined Alexander and I."

50. The above statements spoken by Gerson were false and defamatory, were known or should have been known to be false and defamatory, and were spoken willfully and maliciously with the intent to damage Poruri's good name and reputation.

51. Upon information and belief, Gerson and others employed by GLG have made similar defamatory statements to GLG's clients.

52. Poruri has been injured in her good name and reputation as an analyst by virtue of the defamatory statements.

WHEREFORE, Poruri demands judgment against GLG for compensatory damages and punitive damages in an amount to be determined at trial, and such other relief as the Court may deem appropriate, together with interests and costs.

## FOURTH COUNT
### (Fraud)

53. Poruri repeats and makes a part hereof the allegations contained in Paragraphs 1 through 52 as if fully set forth herein.

54. During the course of her employment, GLG made numerous representations to Poruri regarding what her total compensation would be inclusive of salary and bonuses.

55. GLG made such representations knowing them to be false at the time they were made.

56. GLG made such representations with the intent that would be relied upon by Poruri.

57. Poruri did in fact rely upon the representations made by GLG.

58. Poruri relied upon the representations to her detriment by continuing to work at GLG and has suffered damages as a result thereof.

WHEREFORE, Poruri demands judgment against GLG for compensatory damages and punitive damages in an amount to be determined at trial, and such other relief as the Court may deem appropriate, together with interests and costs.

## FIFTH COUNT
### (Violation of New York City Human Rights Law)

59. Poruri repeats and makes a part hereof the allegations contained in Paragraphs 1 through 58 as if fully set forth herein.

60. Poruri has been denied by GLG terms and conditions of employment, including but not limited to wages, promotions, discipline and conditions of employment, equal to those afforded male and non-Indian employees in violation of the New York City Human Rights Law § 8-101 *et. seq.* of the New York City Administrative Code.

61. Moreover, Poruri was terminated for allegedly engaging in conduct which in fact had been engaged in by a white male against whom no disciplinary action was taken by GLG.

WHEREFORE, Poruri demands judgment against GLG for compensatory damages and punitive damages in an amount to be determined at trial, and such other relief as the Court may deem appropriate, together with interests and costs.

## SIXTH COUNT
### (Violation of New York State Human Rights Law)

62. Poruri repeats and makes a part hereof the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

63. Poruri has been denied by GLG terms and conditions of employment, including but not limited to wages, promotions, discipline and conditions of employment, equal to those afforded male and non-Indian employees in violation of the New York State Human Rights Law, Executive Law § 290 *et. seq.*

64. Moreover, Poruri was terminated for allegedly engaging in conduct which in fact had been engaged in by a white male against whom no disciplinary action was taken by GLG.

WHEREFORE, Poruri demands judgment against GLG for compensatory damages and punitive damages in an amount to be determined at trial, and such other relief as the Court may deem appropriate, together with interests and costs.

## SEVENTH COUNT
### (Violation of Cal. Business & Professions Code § 17200 et seq.)

65. Poruri repeats and makes a part hereof the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

66. California Business and Professions Code § 17200 provides that "unfair competition shall mean and include unlawful, unfair or fraudulent business acts or practices."

67. The Act is designed to prevent unlawful, unfair, or fraudulent business acts or practices, and restitution (disgorgement) of money or property wrongfully obtained by means of such unfair competition.

68. An "unfair" business practice occurs when that practice offends any established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

69. By virtue of the above described conduct, GLG has engaged in immoral, unethical, oppressive and unscrupulous conduct that has been substantially injurious to consumers of investment research services in violation of Cal. Bus. & Prof. Code § 17200.

70. In addition, GLG's conduct described above has been designed to and has succeeding in preventing or in delaying entry of another firm into the market for investment research services.

71. In addition, GLG's conduct described above has been designed to and has succeeded in preventing or interfering with Poruri's ability to work for another firm providing investment research services.

WHEREFORE, Poruri demands judgment against GLG for compensatory damages, attorneys' fees, and punitive damages in an amount to be determined at trial, and such other relief as the Court may deem appropriate, together with interest and costs.

## JURY DEMAND

Defendant hereby demands a trial by jury on all issues presented in this matter.

DATED:   New York, New York
          January 6, 2003

                                    PITNEY, HARDIN, KIPP & SZUCH LLP

                                    By: _____
                                              Barry M. Kazan

                                    685 Third Avenue
                                    New York, NY 10017-4024
                                    (212) 297-5800

                                    Attorneys for Defendant Laxmi Poruri